# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-2802

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DONALD G. MOORE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 01-30031—**Richard Mills**, *Judge.*

ARGUED MAY 20, 2003—DECIDED JULY 12, 2004

Before COFFEY, KANNE, and DIANE P. WOOD, *Circuit Judges.*

COFFEY, *Circuit Judge.* Donald Moore pleaded guilty to one count of possession of cocaine base (crack) with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii), after the district court denied his motion to suppress crack seized by Springfield, Illinois, police officers when they searched Moore during a traffic stop of a taxicab in which Moore was a passenger. The district court found that Moore consented to the search. Moore's guilty plea was conditioned on allowing him to appeal the district court's denial of his motion to suppress, and that appeal is before us now. We affirm.

## I. Background

On February 24, 2000, Springfield Police Detective Steve Welsh and Officer Dave Baxter were conducting surveillance of arriving passengers at the Amtrak station in Springfield, in response to information that drug couriers were transporting narcotics intended for distribution in the Springfield area via Amtrak trains. From their vantage point in the train station's observation room, both officers noticed Moore as he got off one of the trains and moved quickly towards the station. The officers' interest in Moore piqued when he looked into the observation room, saw Baxter's police uniform (Welsh was dressed in plain clothes), and "got kind of a surprised look on his face." The officers decided to question Moore, but before they could reach him Moore left the station and got into the backseat of a taxicab van. Both officers followed the cab, Baxter in his squad car and Welsh in an unmarked car. Baxter pulled the cab over after he saw the driver make two lane changes without signaling. Welsh joined the traffic stop in his car, and both Baxter and Welsh then exited their vehicles and approached the cab.

Baxter walked over to the driver, Larry Antle, explained the reason for the stop, and asked Antle for his license, registration, and proof of insurance. Meanwhile, Welsh walked around to the passenger's side of the taxi, opened the van's sliding door, identified himself as a detective with the Springfield police department, and asked Moore if he could ask him a couple of questions. Moore said "yes." Welsh first asked Moore if he was traveling from Chicago. Moore said he was not, and that he was returning from Bloomington, Illinois, where he had been visiting a friend. Moore further explained that he used to live in Chicago, but for the past year had lived in Springfield with a girlfriend on "Bluebird Court." Welsh next asked Moore for identification, which Moore could not produce—he said he had an Illinois identification card, but did not have it with him.

After obtaining Antle's documents, Baxter walked over to the passenger's side of the cab where Welsh continued to question Moore. Welsh had Baxter write down the identifying information Moore supplied (Baxter had a notepad, Welsh did not). Moore told the officers that his name was "Brian Smith," he was 27 years old, his birthdate was December 21, 1973 (which would make him 26 at the time, not 27), and that he lived at 1654 Bluebird Court in Chicago (recall that Moore earlier claimed that he was living on an identically-named street in Springfield with his girlfriend). Moore also supplied a partial social security number.

With both Antle's and Moore's information in hand, Baxter returned to his squad car to run background checks on both of the cab's occupants. Welsh remained with Moore and asked him if he had any contraband. Moore replied that he did not. By this time, Baxter's background check of Moore revealed that Moore had given the officers false information about his identity. Baxter relayed these results to Welsh, and Welsh asked Moore to step out of the van. Moore complied.

Welsh then asked Moore if he would consent to a search. Moore said he would, and (voluntarily) raised his hands up and placed them on the van. During the subsequent search, Welsh felt a hard, square object in the pocket of Moore's denim jacket (Moore was wearing the denim jacket under a leather jacket). Based on his training and experience, Welsh suspected that the object he felt in Moore's jacket was crack. Welsh removed the object, and Moore fled. Both officers chased after Moore and found him hiding in a bathroom stall at a nearby hotel. The object indeed turned out to be crack (11 grams worth), and the officers arrested Moore, but let Antle (the driver) leave with a verbal warning.

Moore was indicted on one count of possession with intent to distribute five or more grams of crack, 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii). Moore initially pleaded not guilty

and filed a motion to suppress the crack and any statements that he made during his arrest. Moore alleged: 1) that the officers exceeded the permissible scope of the traffic stop and illegally seized him when Baxter joined Welsh in questioning him instead of expeditiously completing the purpose of the traffic stop; and 2) that Welsh's search of his inner jacket pocket exceeded the scope of his consent to a "pat-down" search and was thus an illegal search that could not be justified by the "plain feel" doctrine. The government responded, and argued that Moore validly consented both to Welsh's initial questioning of him and to Welsh's subsequent search of his clothing, and that Moore gave the officers reasonable suspicion to detain him when he gave them false information about his identity.

The court referred Moore's motion to a magistrate judge, who recommended that the motion be denied after finding that: 1) the traffic stop was based on probable cause; 2) Baxter did not exceed the scope of the stop when he assisted Welsh in obtaining Moore's identifying information; 3) Moore consented both to Welsh's questioning and his subsequent search of Moore's clothing; and 4) Welsh's search would have been proper under the "plain feel" doctrine. The district court adopted the magistrate's report and recommendation *in toto*, and accordingly denied Moore's motion. Moore then changed his plea to guilty, but reserved his right to appeal the court's denial of his motion to suppress.

## II. Issues

On appeal, Moore argues that the court erred in denying his motion to suppress because: 1) the officers exceeded the permissible scope of the traffic stop when they questioned him regarding matters unrelated to the purpose of the stop, thus constituting an illegal seizure; and 2) Welsh exceeded the scope of Moore's consent to a "pat-down" search when he reached inside Moore's inner jacket pocket.

### III.  Analysis

### A.  The Officers' Questioning of Moore

We first address Moore's argument that the officers exceeded the permissible scope of the traffic stop when they questioned him regarding matters unrelated to the purpose of the stop (and thus illegally seized him). As a preliminary matter, we note (and Moore does not dispute) that the officers had probable cause to stop the cab Moore was riding in when they observed its driver make two lane changes without signaling, violations of 625 ILCS 5/11- 804. *See Whren v. United States*, 517 U.S. 806, 809-10 (1996) (police may stop a vehicle when they have "probable cause to believe that a traffic violation has occurred"). Once the officers (legally) stopped the cab, Moore, as a passenger in the vehicle, became subject to the officers' custody and control "until their safety could be assured."[1] *United States v. Childs*, 277 F.3d 947, 949 (7th Cir. 2002) (citing *Maryland v. Wilson*, 519 U.S. 408 (1997)). And, incident to his status as a passenger of a vehicle involved in a traffic stop, Moore could be questioned by the officers without their questions being deemed a "seizure" for Fourth Amendment purposes (and thus perhaps requiring reasonable suspicion or probable cause to justify the questions being asked at

---

[1]  Moore argues that the officers' stop of the cab was pretextual, in that their only reason for stopping the vehicle was to question him about suspected drug activity. Moore further contends that the officers lacked reasonable suspicion, based on their observations at the train station, to stop him independently of their stop of the cab. Neither of these arguments warrants consideration. As long as the officers had probable cause to stop the taxicab, which they did, their subjective motives are irrelevant. *Whren v. United States*, 517 U.S. 806, 813 (1996). And they needed no further justification than the cabdriver's traffic violation to stop Moore as the vehicle's passenger. *Maryland v. Wilson*, 519 U.S. 408, 413-14 (1997).

all). *Childs*, 277 F.3d at 951; *see also United States v. Thompson*, 106 F.3d 794, 798 (7th Cir. 1997); *United States v. Finke*, 85 F.3d 1275, 1280-81 (7th Cir. 1996); *United States v. Tipton*, 3 F.3d 1119, 1122 (7th Cir. 1993); *United States v. Rivera*, 906 F.3d 319, 322 (7th Cir. 1990); *United States v. Holt*, 264 F.3d 1215, 1220-21 (10th Cir. 2001); *United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir. 1993). Thus, clearly, Moore was not illegally seized when Welsh approached the passenger's side door of the cab and asked Moore if he would be willing to answer some questions.

There remains, however, the question of whether the officers' questioning of Moore, reasonable at its inception, nonetheless became unreasonable (and therefore requiring Fourth Amendment scrutiny) because the progressive questioning exceeded the "duration" or "scope" of the stop. *Cf. Childs*, 277 F.3d at 955-61 (Cudahy, J., concurring) (agreeing with the result on other grounds, but arguing that both "duration" and "scope" of questioning should be considered regardless of impetus for stop). *But cf. id.* at 952-53 (determining that an inquiry into the "duration" and "scope" of questioning not necessary when there was probable cause to arrest passenger for seatbelt violation before questioning started). But we need not address this question (or further parse out the rationale of *Childs*), for here Moore consented to answer further questions from Welsh,[2] and it is well settled that a consensual encounter

---

[2] Moore argues that the district court erred in finding that he voluntarily consented to answer Welsh's questions. However, the district court did not even pass on this question because Moore failed to make this argument to the magistrate judge. Accordingly, this argument is waived. *United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000) (arguments not made before the magistrate judge are waived). We note also that Moore admitted at his suppression hearing before the magistrate that he did, in fact, willingly agree to answer Welsh's questions. *See* Tr. at 59-60, 65-66.

(continued...)

between an individual and a law enforcement official does not trigger Fourth Amendment scrutiny, *see United States v. Drayton*, 536 U.S. 194, 207 (2002); *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *United States v. DeBerry*, 76 F.3d 884, 886 (7th Cir. 1996), so that an inquiry into the duration or scope of the officers' questioning is unnecessary. Thus the officers' questioning of Moore was not, in any respects, an illegal seizure.

### B.  Welsh's Search of Moore's Jacket

Moore next argues that Welsh exceeded the scope of his consent to a "pat-down" search when Welsh reached inside Moore's inner jacket pocket and retrieved the crack that led to Moore's indictment and conviction for possession of crack with intent to deliver. Moore argues that he consented only to a "pat-down" search rather than a full search of his clothing. The magistrate judge disbelieved Moore's version of the events, and instead credited Welsh's testimony that Moore had consented to a thorough search, not limited to a protective search for officer safety. The district court adopted the magistrate's findings in holding that the full search was consensual, and thus the Fourth Amendment did not require suppression of the drugs (or any subsequent statements Moore made).

If Moore indeed consented to the search, Welsh needed no warrant or probable cause to conduct it.[3] *Schneckcloth v.*

---

[2] (...continued)

We therefore make no finding as to this issue and note only that, on the facts presented, Moore's argument that his consent was coerced appears to be foreclosed by the Supreme Court's holdings in *Florida v. Bostick*, 501 U.S. 429, 436-37 (1991) and *United States v. Drayton*, 536 U.S. 194, 206-07 (2002).

[3]  We note that after the officers discovered that Moore had supplied them with false information, the officers, at a minimum, had

(continued...)

*Bustamonte*, 412 U.S. 218, 219 (1973) (stating that "one of the specifically established exceptions to the requirement of both a warrant and probable cause is a search conducted pursuant to consent"). Here, the issue boils down (as it often does) to a credibility contest between Moore and Detective Welsh. The magistrate and the district court chose to believe Welsh, and Moore faces a demanding standard of review in trying to convince us that both the magistrate and the district court were wrong. *United States v. Mancillas*, 183 F.3d 682, 710 (7th Cir. 1999) (a court's credibility determinations should be upheld unless it credits "exceedingly improbable testimony"); *see also United States v. Gillaum*, 355 F.3d 982, 987 (7th Cir. 2004) (applying same standard of review to credibility determinations of magistrate judge).

In support of his argument, Moore contends that Welsh's testimony at the suppression hearing was inconsistent with his testimony before the grand jury. Moore points out that, at the suppression hearing, Welsh testified that he simply asked Moore if "[he] could search" him without limiting the scope of his request, Tr. at 42, but before the grand jury, Welsh had stated that he only asked Moore for consent to conduct a "pat-down" search, Tr. at 43. But Moore conve-

---

[3]  (...continued)
reasonable suspicion to "suspect that criminal activity may be afoot," and could have conducted a "pat-down" search of Moore to ensure their safety without asking for his consent. *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968). The officers also, however, may have had probable cause at this point to arrest Moore for obstruction of justice, *see* 720 ILCS 5/31-4; *Tipton*, 3 F.3d at 1123-24, which would have allowed them to conduct a full search of Moore (also without his consent), *United States v. Robinson*, 414 U.S. 218, 235 (1973). The government argued this point before the magistrate (the magistrate agreed with the government) and the district court, but does not press this argument on appeal.

niently ignores that, when Welsh was asked later in the grand jury proceeding to clarify his statement, Welsh testified that he specifically asked Moore "for permission to search inside his clothing." Tr. at 51. Thus Moore's only cognizable attack on the court's decision to credit Welsh's testimony rather than his own is weak indeed, and does not direct our attention to the sort of thing that we would consider "exceedingly improbable" or "contrary to the laws of nature," as the standard of review demands to necessitate reversal of the trial court's credibility findings. *Mancillas*, 183 F.3d at 710.

Rather, the record reflects that the court's (and the magistrate's) decision to believe Welsh's version of the events was exceedingly rational, and based on the consistent testimony Welsh provided throughout the hearing, testimony that mirrored his statement in his police report—that he asked Moore "if I could search his clothing, and he said yes." Tr. at 51. Additionally, Welsh's testimony was corroborated by the taxicab driver, Antle, who testified that, although he was unsure whether Welsh asked if he could search or pat down Moore, he saw Moore turn around and place his hands on the cab. Tr. at 11. Antle's observations supported Welsh's account rather than Moore's—Moore testified that during the search he remained face-to-face with Welsh and never turned around and placed his hands on the cab.[4] Based on an in-court

---

[4] That Moore placed his hands on the cab does not necessarily mean that he consented to a more extensive search than a "patdown," as police officers generally request that suspects assume this position even when only conducting a cursory search for weapons. *See, e.g., United States v. Mitchell*, 256 F.3d 734, 735 (7th Cir. 2001). The (proper) inference that the district court drew from Antle's and Moore's conflicting accounts was not that Antle's observations led directly to the conclusion that he had consented

(continued...)

assessment of both Welsh's and Moore's credibility, the magistrate—and later the district court reviewing the magistrate's findings—concluded that Welsh's account was more believable than Moore's. Thus we see no reason to disturb the district court's finding that Moore consented to a full search rather than just a cursory "pat-down" search for weapons.[5]

Accordingly, the district court's decision to deny Moore's motion to suppress is AFFIRMED.

A true Copy:

     Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*

---

[4] (...continued)
to a full search, but rather that Moore's account of the events was less believable because his testimony on this point conflicted with both Welsh's testimony and Antle's bystander account.

[5] Given our resolution of this issue based on Moore's validly tendered consent, we express no opinion as to whether Welsh's search of Moore was otherwise justified under the "plain feel" exception to the warrant requirement as articulated by the Supreme Court in *Minnesota v. Dickerson*, 508 U.S. 366 (1993).