**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued April 19, 2005
Decided May 16, 2005

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-3314

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Illinois |
| v. | No. 02-CR-30060-DRH |
| JOHN M. WYATT, *Defendant-Appellant*. | David R. Herndon, *Judge*. |

**O R D E R**

Pursuant to a conditional plea agreement, John M. Wyatt pleaded guilty to possession with intent to distribute over 100 kilograms of marijuana, 21 U.S.C. § 841(a)(1), and was sentenced to 262 months' imprisonment.  Under the plea agreement, Wyatt reserved the right to challenge on appeal the district court's denial of his motion to suppress under the Fourth Amendment the evidence seized during a search arising from a traffic stop of his rented recreational vehicle (RV).  Wyatt argues that after the traffic stop ended the police detained him without reasonable suspicion to conduct a canine sniff of the RV, and that the positive alert by the dog did not give the officer probable cause to search the vehicle.  In addition, Wyatt challenges his career offender sentence under U.S.S.G. § 4B1.1, as well as the reasonableness of the term imposed.  We affirm his conviction and sentence.

I.

We recount from the testimony at the suppression hearing the early morning traffic stop on January 15, 2002, that led to Wyatt's conviction. At 3:19 a.m., Narcotics Officer Modrusic, working with his canine partner Seer, initiated a traffic stop after spotting an RV traveling at 60 miles per hour in a 55-mile-per-hour zone. As the officer approached the driver, he noticed that a bed visible through a window was elevated to a level "even with the window." The officer testified that the height of the bed "seemed rather odd." Wyatt, the driver, identified himself and provided his driver's license and "vehicle paperwork." Modrusic testified at the hearing that Wyatt seemed "real nervous" and was "shaking." Questioning Wyatt about his travel plans, Modrusic learned that Wyatt was returning home to Chicago after spending four or five days in Phoenix, Arizona. According to the officer's testimony, Wyatt said he rented another car to drive to Arizona and then once in Phoenix he rented the RV to return home. Modrusic thought it "odd" for a person to rent an RV to travel alone from a warmer climate to a colder climate in the middle of winter. Adding to Modrusic's suspicions, the rental agreement specified the pickup point as Mesa, not Phoenix as Wyatt had claimed; Modrusic was not aware that Mesa is a suburb of Phoenix.

At that point, Officer Modrusic returned to his patrol car and radioed for back-up. The officer told the dispatcher that he felt "something ain't right" because Wyatt was "shaking like a leaf" and "his story wasn't panning out." Then, while running a license check, Modrusic discovered that Wyatt was on probation for what he assumed was a drug offense.

Officer Modrusic's captain, McKinney, arrived within minutes to act as back-up. Modrusic told him of his suspicions and that he planned to issue Wyatt a warning and then request consent to search the RV. The captain approached Wyatt, who was still in the driver's seat. Conscious of the camcorder that had been recording the traffic stop from the dashboard of Modrusic's car, the captain requested that Wyatt walk around to the back of the RV to meet Modrusic. Modrusic testified that he then returned all Wyatt's documents, issued and explained a written warning for speeding, and advised Wyatt that he was "free to leave." As Wyatt took one or two steps toward the RV, Modrusic asked if Wyatt "would consent to a search of the vehicle." Wyatt declined. Wyatt testified at the hearing that he viewed the encounter at this point as a detention. Modrusic then asked whether Wyatt was on probation. According to Modrusic, Wyatt answered that "when he was young and dumb, he got caught running cannabis." Modrusic followed up with a request to "walk the police canine around the vehicle." Wyatt's response is in dispute; Modrusic testified that Wyatt agreed to the canine sniff, but

Wyatt testified that he refused.  At this point, no more than 10 minutes had passed since Modrusic initiated the stop.

Officer Modrusic retrieved the dog, Seer, from his patrol car and walked the dog around the RV.  The dog alerted by scratching in two locations: the seam of the driver's door and the "passenger rear corner in the back of the vehicle" (which does not seem to be near the bed inside the RV from the officer's description).  Among other skills, Seer is trained in the detection of narcotics, having graduated from a 14-week course at the St. Louis City Canine Police Academy.  Modrusic and Seer also attend periodic courses to refresh the dog's skills.  There is no evidence in the record, however, about Seer's accuracy in detecting narcotics.

Once Seer alerted, Officer Modrusic informed Wyatt that he had probable cause to search the vehicle.  Nonetheless, Modrusic wanted to contact the State's Attorney's office before conducting a warrantless search.  Modrusic testified that Wyatt asked whether he was free to go; Modrusic responded that he was but said the RV would be detained pending an answer from an on-call state's attorney.  Wyatt chose to leave in a taxicab before the search, traveling to the St. Louis airport, rather than the nearby hotel where the officers assumed he would wait.

Officer Modrusic received permission from the state's attorney to search the RV without a warrant based on the canine alert.  In searching the RV, Modrusic and McKinney found 2 large duffels in the RV's shower and 11 similar duffels under the bed, all filled with bales of marijuana totaling 128 kilograms.  After finding the marijuana within 10 minutes of Wyatt's departure, the officers tracked down Wyatt's location via the cab company.  Wyatt was arrested a week later.

Wyatt moved to suppress the marijuana, arguing that Officer Modrusic did not have reasonable suspicion to detain him beyond the completion of the traffic stop.  The district court denied Wyatt's motion in an oral opinion.  Bypassing the question whether Modrusic had reasonable suspicion to detain Wyatt beyond the traffic stop, the court found the post-stop encounter to be consensual and Wyatt to have consented to the canine sniff.  Finding it "obvious" that as a "convicted felon" Wyatt "is savvy to search and seizure rules," the court believed that Wyatt thought the dog would not alert to narcotics because it was a cold night and the marijuana was "bundled up" inside the vehicle.  Given, then, the positive alert by the dog and the advice of the state's attorney, along with Modrusic's other bases for reasonable suspicion—Wyatt's extreme nervousness, the higher-than-usual bed, renting one vehicle to travel to Phoenix and an RV to return, identifying Phoenix instead of Mesa, and Wyatt's probationary status and prior offense of "running marijuana"—the court concluded that the officer had probable cause to search the vehicle.

Before the preparation of the presentence report and sentencing, the Supreme Court decided *Blakely v. Washington*, 124 S. Ct. 2531 (2004), which holds that facts, except for prior convictions, that increase a "statutory maximum" must be admitted or proven beyond a reasonable doubt to a jury, and we interpreted the 6th Amendment right discussed in *Blakely* to apply to the federal sentencing guidelines in *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004). The probation officer still relied on the guidelines in her presentence report to arrive at an imprisonment range of 262 to 327 months based on the career offender guideline. *See* U.S.S.G. § 4B1.1. The career offender status was premised on a prior controlled substance offense and a conviction for escape from custody, which the probation officer categorized as a crime of violence. Wyatt objected, arguing that his conviction for a nonviolent escape was not a crime of violence and that, under *Blakely* and our decision in *Booker*, the court could not apply § 4B1.1 based on facts not found by a jury beyond a reasonable doubt.

At sentencing the district court adopted the probation officer's recommendations and sentenced Wyatt to 262 months under the guidelines. The court first relied on *United States v. Bryant,* 310 F.3d 550 (7th Cir. 2002), to reject Wyatt's argument that escape should not categorically be considered a "crime of violence." In response to Wyatt's *Blakely/Booker* objections, the court recognized that the Supreme Court might later rule the guidelines to be advisory (which did occur when the Court affirmed this court's decision in *Booker*, *see United States v. Booker*, 125 S Ct. 738 (2005)), and imposed a nonguideline term of 262 months in the alternative. In fashioning its alternative sentence, the court consulted the factors listed in 18 U.S.C. § 3553(a).

II.

On appeal Wyatt first challenges the denial of his motion to suppress. He contends that Officer Modrusic intended from the beginning of the traffic stop to search his RV for narcotics and that, because the scope of the stop exceeded its pretextual justification, the stop violated the Fourth Amendment. In addition, Wyatt contends that Modrusic detained him "at least a few seconds, if not a few minutes" beyond the completion of the traffic stop without reasonable suspicion or his consent. In reviewing the district court's factual findings for clear error and its legal conclusions de novo, we give special deference to the district court that heard the testimony and had the best opportunity to observe the witnesses at the suppression hearing. *United States v. Jackson*, 300 F.3d 740, 745 (7th Cir. 2002).

The scope and duration of a traffic stop must be reasonably related to its initial purpose. *United States v. Brown*, 188 F.3d 860, 864 (7th Cir. 1999). Where an officer can articulate grounds that establish reasonable suspicion of criminal activity, he may extend the duration of the traffic stop to investigate that activity.

*United States v. Walden*, 146 F.3d 487, 490 (7th Cir. 1998). Whether reasonable suspicion exists depends on a consideration of the totality of the circumstances known to the officer at that time including his experiences and common sense. *Jackson*, 300 F.3d at 745-46.

As an initial matter, Wyatt's argument that Officer Modrusic's subjective intent vitiated the reasonableness of the search warrants little discussion. Modrusic had probable cause to initiate a traffic stop because Wyatt had undisputedly committed a traffic violation by speeding, and so Modrusic's subjective intent is irrelevant for purposes of Wyatt's Fourth Amendment argument. *See, e.g., Whren v. United States*, 517 U.S. 806, 813 (1996); *United States v. Moore*, 375 F.3d 580, 583 n.1 (7th Cir. 2004); *United States v. Robinson,* 314 F.3d 905, 907 (7th Cir. 2003); *Valance v. Wisel*, 110 F.3d 1269, 1275 (7th Cir. 1997).

The real issue is whether Modrusic's request to search the RV after he completed the traffic stop by issuing a warning was a further detention requiring reasonable suspicion or a consensual encounter. *See Ohio v. Robinette*, 519 U.S. 33, 35 (1996) (recognizing possibility of consensual encounter following completion of traffic stop in holding that officer does not have to inform driver that he is free to go)*; Moore*, 375 F.3d at 584 (consensual encounters between individual and officer do not trigger Fourth Amendment scrutiny). Wyatt provides little reason other than the length of the encounter to disturb the district court's conclusion that the post-stop encounter was consensual. Once Modrusic returned Wyatt's paperwork with a warning and told him he was "free to go," his request to search the RV without more did not amount to a new seizure. *See United States v. Rivera,* 906 F.2d 319, 323 (7th Cir. 1990) (holding that officer's request to search was part of consensual encounter after officer had issued written warning, returned defendant's documents and declared him free to go); *cf. United States v. Finke*, 85 F.3d 1275, 1281 (7th Cir. 1996) (until officer told defendants that he was calling canine unit, court might have upheld encounter as consensual where all documents were returned, defendants were told they were free to go, and officer asked if defendants "had a minute" before requesting permission to search).

In any event, even if Officer Modrusic's questioning amounted to a seizure, he had reasonable suspicion to detain Wyatt further in order to investigate whether Wyatt was transporting narcotics. Modrusic listed the following factors as contributing to his reasonable suspicion: (1) Wyatt's nervousness, (2) the unusual height of the bed visible through the RV window, (3) Wyatt's exchange of a rental car with a rental RV for his return trip from Phoenix, (4) his driving alone in an RV back home to a colder climate, and (5) his prior criminal history. In the face of this list, Wyatt's attempts to explain away his shaking by citing the cold weather and characterizing the other grounds as "specious," do little to deflect the specter of reasonable suspicion. This is because Wyatt never confronts the most suspicious

factors Modrusic cited: the unusual height of the bed when considered along with the one-way rental of a type of vehicle favored for transporting large quantities of drugs. *See United States v. Salzano*, 158 F.3d 1107, 1112-12 (10th Cir. 1998) (reasonable suspicion when considering both use of tractor trailer, which is often used to transport large amounts of drugs, and an additional suspicious element of vehicle); *see also United States v. Patterson*, 65 F.3d 68, 71 (7th Cir. 1995) (recognizing modification to tailgate interior—missing screws—a factor supporting probable cause); *United States v. Seals*, 987 F.2d 1102, 1107 (5th Cir. 1993) (considering modification to rear seat a factor supporting probable cause). Although there may be an innocent explanation for each individual factor Modrusic identified, when considered together against the background of a narcotic officer's experience, the factors rise to reasonable suspicion of drug activity. *See Finke*, 85 F.3d at 1280 (although possible innocent explanation for each factor, reasonable suspicion where car was a rental, travel plans to California brief and made straight through without stopping, and defendants nervous and evasive); *see also Jackson,* 300 F.3d at 746 (knowledge of criminal record can contribute to totality of circumstances); *Brown*, 188 F.3d at 865 (nervousness can be considered as one of several factors).

Given the existence of reasonable suspicion, we need not address Wyatt's challenge to the district court's finding that he consented to the dog sniff of the RV exterior. A canine sniff of the exterior of a vehicle that reveals no information other than the location of narcotics does not implicate any separate Fourth Amendment concerns; Wyatt need only be lawfully detained. *See Illinois v. Caballes*, 125 S. Ct. 834, 838 (2005); *United States v. Gregory,* 302 F.3d 805, 810 (8th Cir. 2002); *United States v. Dortch*, 199 F.3d 193, 197 (5th Cir. 1999). Regardless, Wyatt's reliance on the videotape to establish that he did not consent to the canine sniff cannot overcome the deference that we pay to a district court's factual findings. According to Wyatt, the videotape never shows "any sign" that Wyatt "talked or motioned with his head to give consent." Objectively, however, the tape is of little value on this issue because Wyatt's face is so overexposed from the light of Captain McKinney's flashlight that one could not see what he said to the officers and the tape did not record the conversation. And Wyatt's rationale that he would not have consented to the dog sniff if he did not consent to a search is merely an alternative theory and does not undercut the court's reasoning that Wyatt did not believe the dog would find the narcotics based on the cold weather and their location. *See Robinson*, 314 F.3d at 907 (disturbing district court's credibility finding only where court credited exceedingly improbable testimony). There is no reason to disturb the district court's finding that Wyatt consented to the canine sniff, and so it did not violate the Fourth Amendment. *See Moore*, 375 F.3d at 584.

In a final effort to suppress the seized marijuana, Wyatt asserts that, even if the canine sniff did not violate the Fourth Amendment, the dog's positive alerts to

drugs did not provide probable cause to search the RV. Probable cause was lacking, Wyatt contends, because the government failed to establish that the dog, Seer, was sufficiently trained and had an accurate track record in detecting narcotics. To shore up his claim that Seer was not reliable, Wyatt points to the dog's alerting to sites in the RV where drugs were not found (the driver's door and the rear passenger corner).

Wyatt's reliance on the absence of information in the record about Seer's accuracy is not enough to overcome the generally accepted principle that a positive alert from a well-trained dog is enough for probable cause. *See, e.g., Dortch,* 199 F.3d at 197 (dog's positive reaction to narcotics establishes probable cause); *United States v. Thomas,* 87 F.3d 909, 912 (7th Cir. 1996) (same). The record establishes that Seer was well-trained; Officer Modrusic testified about Seer's graduation from a 14-week program and the refresher courses the two take to maintain the dog's skills. *See United States v. Robinson,* 390 F.3d 853, 875 (6th Cir. 2004) (it would be inappropriate to require mini-trial on dog's training and performance before officer can rely on dog alert; it is enough for officer to know dog is certified in drug detection); *United States v. Boxley,* 373 F.3d 759, 762 (6th Cir. 2004) (once established that dog is certified, evidence as to reliability goes only to credibility, not qualifications); *United States v. Sanchez-Pena,* 336 F.3d 431, 444 (5th Cir. 2003) (evidence of dog's certification sufficient proof of training). And Wyatt's assumption about Seer's accuracy based on its alerts to the RV is misplaced; we review probable cause based on information known to the officers at the time of the search, *Smith v. Lamz,* 321 F.3d 680, 684-85 (7th Cir. 2003), and there is no evidence that Modrusic had any doubts about Seer's accuracy.

Wyatt also does not succeed in his sentencing arguments. Wyatt first makes the familiar argument that escape should not be categorically classified as a crime of violence for purposes of the career offender guideline. We have previously rejected Wyatt's contention because of the ever-present potential for escape to become violent. *See, e.g., United States v. Howze,* 343 F.3d 919, 921-22 (7th Cir. 2003); *Bryant,* 310 F.3d at 553-54; *United States v. Franklin,* 302 F.3d 722, 724 (7th Cir. 2002); *United States v. Nation,* 243 F.3d 467, 472 (8th Cir. 2001); *see also United States v. Rosas,* 401 F.3d 843, 845 (7th Cir. 2005) (same definition of crime of violence for career offender adjustment and Armed Career Criminal Act). And the Supreme Court's recent decision in *Shepard v. United States,* 125 S.Ct. 1254 (2005), would seem to support the continued categorical consideration of escape as a crime of violence based on its warning against finding facts beyond the judicial record. *See Shepard,* 125 S. Ct. at 1261.

In addition, Wyatt would be hardpressed to establish a *Booker* error. The district court properly anticipated the Supreme Court's ruling in *Booker* by recognizing that the guidelines may be advisory and imposing an alternative

sentence (which happened to be the same as its guidelines' sentence). *See Booker*, 125 S. Ct. at 756-57. Although nonguidelines sentences must still be reviewed for "reasonableness" after *Booker*, no principled argument can be made that Wyatt's sentence was unreasonable. *See Booker*, 125 S. Ct. at 765-66; *see also United States v. Crosby*, 397 F.3d 103, 114-16 (2d Cir. 2005) (recognizing reasonableness as a flexible concept and that sentence may be unreasonable regardless of length where judge committed *Blakely/Booker* error or failed to consider applicable guideline range). Wyatt bases his argument that his sentence was unreasonable on the same losing principle that his escape is not a crime of violence and should not be considered. But the advisory guideline range of 262 to 329 months was properly calculated, as discussed above. *See Bryant*, 310 F.3d at 553-54. And the district court imposed the lowest sentence within that advisory range. *See United States v. Tedder*, — F.3d —, 2005 WL 767061, at *8 (7th Cir. Apr. 6, 2005) (recognizing that applicable guideline range available to district court post-*Booker* without need to justify departure from guidelines).

Accordingly, we AFFIRM Wyatt's conviction and sentence.