In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-1217

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DANIEL GROVES, SR.,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 04 CR 76—**Allen Sharp**, *Judge.*

———————

ARGUED SEPTEMBER 21, 2007—DECIDED JUNE 27, 2008

———————

Before EASTERBROOK, *Chief Judge*, and KANNE and
ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* In this successive appeal, Daniel
Groves challenges the district court's denial of his
Motion to Suppress Evidence, claiming that the ammuni-
tion which provided the basis for his conviction under
18 U.S.C. § 922(g)(1) was recovered from his apartment
during an illegal search, in violation of the Fourth Amend-
ment. In the first appeal, we remanded to the district
court for various factual determinations and renewed
consideration in light of the then-recent Supreme Court
decision in *Georgia v. Randolph*, 547 U.S. 103 (2006). Subse-

quently, the district court again denied Groves' Motion to Suppress. We affirm.

The facts are set forth in detail in *United States v. Groves*, 470 F.3d 311 (7th Cir. 2006) (*"Groves I"*) and we repeat only those necessary to the resolution of this appeal. On July 5, 2004, South Bend, Indiana police officers responded to a report of gun shots from a resident of the house across the street from Daniel Groves' apartment. When questioned by the responding officers, Groves admitted to living at the address in question, to being a convicted felon and to shooting off fireworks, but denied having a gun. Groves also vigorously denied the officers' request for permission to search his apartment. This request to search was reiterated after the officers found three spent shotgun shells on the ground and again Groves unequivocally refused to consent.

Corporal James Taylor, one of the officers who responded to the 911 call on July 5, asked Task Force Agent Lucas Battani of the South Bend Police Department to investigate the incident. Agent Battani applied for a warrant to search Groves' apartment, but a federal magistrate denied the application. In the early afternoon of July 21, 2004, at a time they knew Groves was scheduled to be at work but his girlfriend was likely to be present, Agent Battani, along with two other law enforcement officers, went to Groves' apartment. Shaunta Foster, Groves' girlfriend, answered the door and stepped outside to speak with the three officers. Battani and Foster told somewhat different versions of that conversation, both of which are recounted at length in *Groves I. See* 470 F.3d at 316-17. Ultimately, Foster signed a consent form and the agents searched the apartment, recovering five .22 caliber bullets from a drawer in Groves' nightstand. Groves

was arrested and charged with being a felon in possession of a firearm and being a felon in possession of ammunition. Groves moved to suppress the ammunition found during the July 21 search, arguing that Foster had neither the actual nor the apparent authority to consent to the search. The district court held a hearing at which both Battani and Foster testified. Foster asserted that she told Battani that she did not live at Groves' apartment but was a frequent visitor. Battani testified that Foster admitted that she had moved into Groves' apartment approximately five months earlier. Foster testified that when she refused to sign the consent, Battani told her he would take her downtown and take her daughter to Child Protective Services and that she signed the consent only because of Battani's threats to remove her daughter. Battani denied ever threatening Foster with the removal of her child.

The district court denied the motion to suppress in a cursory order, concluding that Foster had apparent authority to consent to the search of Groves' apartment, that she did consent, and that Battani did not coerce Foster or make threats about her daughter which would have rendered Foster's consent involuntary. *United States v. Groves*, No. 3:04cr0076 (N.D. Ind. Nov. 8, 2004). A jury convicted Groves on both counts and the court sentenced Groves to forty-one months' imprisonment. Groves appealed his conviction and sentence, contending, *inter alia*, that the district court erred when it denied his Motion to Suppress the evidence obtained during the July 21, 2004 warrantless search. In *Groves I*, we reversed the conviction on the gun possession charge and remanded on the suppression issue. We directed the district court to address three issues on remand:

(1) whether Foster had apparent or actual authority to consent to the search of Groves' apartment; (2) whether *Georgia v. Randolph* affected the suppression claim; and (3) whether Foster voluntarily consented to the search. On remand, the district court issued an order attending to each of our concerns and setting forth findings of fact. *United States v. Groves*, No. 3:04cr0076, 2007 WL 171916 (N.D. Ind. Jan. 17, 2007) ("*Groves II*"). The court again denied Groves' Motion to Suppress, and Groves again appeals.

In considering the district court's denial of Groves' Motion to Suppress, we review questions of law *de novo* and findings of fact for clear error. *United States v. Denberg*, 212 F.3d 987, 991 (7th Cir. 2000). A warrantless search does not violate the Fourth Amendment if a person possessing, or reasonably believed to possess, authority over the premises voluntarily consents to the search. *Randolph*, 547 U.S. at 106. "[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, non-consenting person with whom that authority is shared." *United States v. Matlock*, 415 U.S. 164, 170 (1974). The rationale for this long-standing rule is that by allowing someone else to exercise actual or apparent authority over one's property, one "is considered to have assumed the risk that the third party might permit access to others, including government agents." *United States v. Basinski*, 226 F.3d 829, 834 (7th Cir. 2000) (citing *Matlock*, 415 U.S. at 171 n.7; and *United States v. Jensen,* 169 F.3d 1044, 1049 (7th Cir. 1999)). Because " 'consent to a search may be obtained [from] any person who has common authority over the property' " (*Denberg*, 212 F.3d at 991 (quoting *United States v. Booker*, 981 F.2d 289, 294 (7th Cir. 1992)), the threshold question is whether the consenting individual did, in fact, have actual or apparent authority.

*See Basinski*, 226 F.3d at 834 ("[t]he key to consent is actual or apparent authority over the area to be searched."). In *Groves I*, we enumerated several factors which, although by no means a complete list, can inform a determination of actual or apparent authority. We reiterate those factors here, as well as our admonition that "[t]his is certainly not an exhaustive list and we do not mean to suggest that district courts should use this as a checklist of factors in determining actual or apparent authority. Rather, it is offered to show the types of facts that should and could be considered in evaluating the issue of authority to consent to a search" (*Groves I*, 470 F.3d at 319, n.3):

> (1) possession of a key to the premises; (2) a person's admission that she lives at the residence in question; (3) possession of a driver's license listing the residence as the driver's legal address; (4) receiving mail and bills at that residence; (5) keeping clothing at the residence; (6) having one's children reside at that address; (7) keeping personal belongings such as a diary or a pet at that residence; (8) performing household chores at the home; (9) being on the lease for the premises and/or paying rent; and (10) being allowed into the home when the owner is not present.

*Id.* at 319 (internal citations omitted).

   We remanded this issue to the district court because we had questions about the court's conclusion that Foster possessed apparent authority to consent to a search of the premises. *See Groves I*, 470 F.3d at 319-20. Specifically, we were troubled by the lack of factual findings issued by the district court and determined that "we cannot review the court's conclusion that Foster had authority to consent to the search." *Id.* at 320. In its ensuing ruling, the district court determined that Foster was a co-occupant of Groves' apartment "who possessed common authority

over the residence as well as the ability to consent to a search of that residence." *Groves II* at *5. In support of this conclusion, the court relied on various facts. For example, the telephone for the residence was registered in Foster's name and paid for by her. Foster had registered her daughter for school using Groves' address. Foster also kept personal belongings including clothing, mail, bills, and even a private stash of marijuana at Groves' apartment. She had a key and unlimited access to the premises. Moreover, Foster regularly cleaned the apartment. *Id.*[1] The court specified which aspects of Foster's testimony and Agent Battani's testimony the court credited in making its factual determinations. *See Groves II* at *3-*5.

"Because the resolution of a motion to suppress is a fact-specific inquiry, we give deference to credibility determinations of the district court, who had the opportunity to listen to testimony and observe the witnesses at the suppression hearing." *United States v. Hendrix*, 509 F.3d 362, 373 (7th Cir. 2007). A factual determination is clearly erroneous only if, after considering all of the evidence, we are left with the definite and firm conviction that a mistake has been committed. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985); *United States v. Messino*, 55 F.3d 1241, 1247 (7th Cir. 1995). Here, we can find no reason to disturb the district court's factual findings which, in turn, support its legal conclusion that Foster possessed the actual authority to consent to a search of Grove's apartment.

---

[1] Of course, many of these facts were not known by the officers until after they entered the premises and thus those facts are relevant only to actual and not apparent authority to consent.

Groves also contends that even if Foster possessed the authority which allowed her to consent to the search of the apartment, she did not possess the authority, actual or apparent, to allow a search of the nightstand drawer in which the incriminating evidence was found. Groves argues that the search of his nightstand was improper because Foster did not give the officers permission to search the nightstand and never told them that she had access to the inside of Groves' nightstand. At most, she admitted to cleaning it. Groves relies heavily on *United States v. Rodriguez*, 888 F.2d 519 (7th Cir. 1989) to support his argument, yet a close reading of *Rodriguez* indicates that this reliance is misplaced. In that case, we found that a wife's possession of the key to open the janitor room utilized by husband (from whom she was separated) gave her apparent authority to consent to a search of that room. The question then became whether she also had the apparent authority to consent to the opening of various closed containers within the room, including her husband's briefcase, which was marked on the exterior with his name, and a metal file box labeled "Mike," his first name. Because there had been no argument as to those containers during the district court's evidentiary hearing, this court remanded for additional findings on the defendant's privacy interests in the closed, labeled containers and his wife's apparent authority to consent to a search of those containers. 888 F.2d at 525.

Groves' case is more analogous to *United States v. Melgar*, 227 F.3d 1038, 1041 (7th Cir. 2000). In *Melgar*, a woman (not the defendant) renting a hotel room consented to a search of that room by officers seeking counterfeit checks. The officers found evidence incriminating Melgar, the defendant, in an unmarked purse discovered between the mattress and box spring of one of the beds in the room.

Because the officers had no way of knowing that the purse belonged to someone other than the woman renting the room, and because the renter consented to a search for counterfeit checks which could have easily been concealed in an object like a purse, we concluded that the scope of the renter's consent encompassed a search of the unmarked, closed purse. 227 F.3d at 1043. Similarly, in Groves' case, the officers told Foster that they were searching for a weapon and/or ammunition, objects that easily could have been concealed in a nightstand drawer. Foster told Battani that there were no limits on where she could go in the apartment, and that she cleaned the entire apartment on a regular basis. *Groves II* at *3. In addition, Foster told the agents that although she did not use the nightstand from which the ammunition was recovered for her own belongings, she did clean it. Therefore, unlike the defendant in *Rodriguez* who had a potential privacy interest in a closed container marked with his name, an interest that may have exceeded his privacy interest in the room generally, Groves had no similar claim for an unlocked, unmarked nightstand drawer in a room he shared with Foster. Thus, Foster's valid consent to a search of the apartment included consent to search the nightstands in the bedroom. *See United States v. Wilburn*, 473 F.3d 742, 745 (7th Cir.), *cert. denied*, 127 S. Ct. 2958 (2007) (search resulting from consent of co-tenant with actual authority included looking into an unlocked and unmarked duffel bag found in the closet of the shared bedroom).[2]

---

[2] Notably, the evidence at the center of the dispute in *Matlock*, 415 U.S. at 164, was cash found in a diaper bag in a closet.

We turn now to the implications, if any, of the *Randolph* decision which was decided by the Supreme Court after we heard oral argument in this case but before we issued our opinion. In *Randolph*, the Supreme Court held that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to police by another resident." 547 U.S. at 120. In drawing this admittedly formalistic line requiring the objecting party to be *physically present* and objecting *at the door*, the Supreme Court affirmed its prior decisions in *Matlock* and *Illinois v. Rodriguez*, 497 U.S. 177 (1990), which permitted co-inhabitants of a dwelling to consent to a search under other circumstances, explaining that:

> [s]o long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it.

*Randolph*, 547 U.S. at 121-22.

There is no dispute that Groves was not physically present when Foster consented to the search. The first time this case was before us, however, we noted that "there was some evidence that the officers here may have effectively 'removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection.'" *Groves I*, 470 F.3d at 321 (quoting *Randolph*, 547 U.S. at 121). That is, Groves' adamant and repeated denials to consent to a search of his apartment on July 5,

the magistrate's denial of a search warrant, and the officers' subsequent decision to approach the apartment at a time when they knew Groves would be absent, initially gave us pause. The district court had no opportunity at the time of the motion to suppress to consider the question because *Randolph* was decided after the case came to us on appeal. Consistent with our remand, the district court considered whether the police officers here "procured Groves' absence for the purpose of avoiding an objection" such that *Randolph* would be triggered. *Groves I*, 470 F.3d at 321. The court found that the officers did nothing to procure Groves' absence from the premises and so *Randolph* provides no relief.

In addition to the officers playing no active role in securing Groves' absence, Groves was not objecting at the door, as *Randolph* requires. Indeed, a few weeks had passed since he had refused the officers' first attempts to obtain his consent. Moreover, that the government agents waited until Groves was at work to seek Foster's consent did not undermine the validity of the search because they had no active role in securing Groves' absence. This fact is critical, as it makes this case even further removed from the facts of *Randolph* than either *Wilburn*, 473 F.3d 742, or *United States v. DiModica*, 468 F.3d 495 (7th Cir. 2006), in which this court declined to apply *Randolph* where the defendants were in valid police custody at the time consent was sought from co-tenants.[3] At bottom, *Randolph* expressly disinvites anything other than the narrowest of readings; because the facts here are readily

---

[3] Admittedly, neither Wilburn nor DiModica had previously explicitly denied consent to search, but as we stated, Groves' earlier denials do not change the analysis.

distinguishable, *Randolph* does not render Foster's consent invalid.

We turn to Groves' argument that Foster's consent was involuntary and, as such, invalid. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 248-49 (1973). In *Groves I*, we analyzed the legal requirements for a valid consent and noted that the district court's single finding relevant to this issue was too minimal and ambiguous to allow us a proper review. 740 F.3d at 321-22. We asked the district court on remand to make detailed findings relating to this issue, and also to "analyze the totality of the circumstances surrounding Foster's consent." *Id.* at 323. Specifically, we asked the court to make fact-findings regarding Foster's age, level of intelligence and degree of education, as well as findings regarding the conduct of the officers. For example, we asked the court to consider, among other things, the show of force displayed by the officers, whether they threatened Foster in any way, the tone of the questioning and the duration of the encounter that led to her signing the consent form.

In its order after remand, the district court clarified that it found Foster not credible and accepted as true Agent Battani's account of what happened the day of the search. *Groves II* at 14. After accurately setting forth the factors to be considered in an inquiry into whether consent was voluntary in a Fourth Amendment case under *Bustamonte*, 412 U.S. at 226, the court analyzed the facts in view of the *Bustamonte* factors, ultimately concluding that Foster's consent was entirely voluntary. *Groves II* at 14-16. The court found that Foster was of at least average intelligence, that the officers did not threaten her in any way, that they did not threaten to remove her child to Child Protective Services, that they did not interrogate

her and that any questioning was neither repetitive nor prolonged in nature. The court found that the officers fully advised Foster of her rights, including her right to insist on a search warrant, her right to consult with an attorney and her right to withdraw her consent. The court found that Foster did not ask for an attorney, that she was not in custody, and that no physical coercion (such as deprivation of food or sleep) was employed. The court found further that the officers did not display overwhelming force, instead arriving in plain clothes, in unmarked cars, with only one of the three officers speaking to Foster. Considering the totality of the circumstances, the court found that Foster's consent was voluntary and not the result of duress or coercion.

The voluntariness of Foster's consent is a factual question which we review for clear error, deferring to the district court's determinations of witness credibility. We will not reverse unless we are left with the definite and firm conviction that a mistake has been made. *United States v. Cellitti*, 387 F.3d 618, 622 (7th Cir. 2004). *See also United States v. Raibley*, 243 F.3d 1069, 1076 (7th Cir. 2001). Now that we are able to review the factual basis for the district court's decision, we conclude there is no reason to disturb the court's findings related to the voluntariness of Foster's consent.

For the foregoing reasons, we find Groves' Motion to Suppress was correctly denied and the judgment of the district court is therefore AFFIRMED.