In the

# United States Court of Appeals

### For the Seventh Circuit

————————

No. 07-3032

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CORY D. MOSBY,

*Defendant-Appellant.*

————————

Appeal from the United States District Court
for the Central District of Illinois.
No. 06 CR 10072—**Joe Billy McDade**, *Judge.*

————————

ARGUED AUGUST 6, 2008—DECIDED SEPTEMBER 4, 2008

————————

Before EASTERBROOK, *Chief Judge*, and KANNE and
WOOD, *Circuit Judges*.

KANNE, *Circuit Judge*.  Police officers arrested Cory
Mosby after stopping and searching the minivan in
which he was a passenger and finding drugs (some
apparently in plain view) and a gun. Police later found
another gun in his apartment. The district court denied
his motion to suppress all of this evidence, and a jury then
found him guilty of all charged offenses. On appeal Mosby

challenges only the denial of his motion to suppress. Because the police had probable cause to stop the mini-van and the driver then consented to a search, which was in any case justified by probable cause, we affirm.

## I.  HISTORY

Mosby was indicted for possessing cocaine base with intent to distribute, *see* 21 U.S.C. § 841(a)(1), (b)(1)(A), possessing a firearm in furtherance of drug trafficking, *see id.* § 924(C), and possessing another firearm as a felon, *see id.* § 922(g)(1). He filed a motion to suppress, claiming that all of the government's evidence was traceable to what he said was the unlawful search of the minivan. At the resulting evidentiary hearing, two police officers described the events leading up to the search. Officer Marion told the court that on August 23, 2006, the Peoria Police Department was conducting a narcotics surveillance of Mosby's apartment. As they watched, at about 3:45 p.m., Mosby and his girlfriend, Ashley Hunter, came outside apparently arguing, and Mosby got into a car parked in the parking lot and sat there briefly. He then went back inside the apartment with Hunter. Moments later, Hunter exited the apartment with a knife and began slicing at the tires of the car in which Mosby had been sitting. Several minutes passed before Mosby came out of the apartment carrying a white plastic garbage bag and walked toward a nearby street with Hunter trailing behind him. As they stood at a corner, a black minivan driven by a third person arrived, and both got in.

The police followed the minivan across town. The driver got out, and Hunter took the wheel and drove to a hospital emergency room. At the hospital Mosby exited the minivan and started walking along a nearby street with his garbage bag, while Hunter went inside the hospital. A few minutes later, however, she returned to the minivan and picked up Mosby.

Officer Marion went into the hospital after Hunter had departed and asked a nurse about her visit. The nurse said that Hunter had cut her finger and required treatment, and she expressed surprise when Marion told her that Hunter had left. Marion passed that information along to Sergeant Mushinsky and asked him to stop the minivan to check on Hunter's injury. Marion warned Mushinsky that officers had seen Hunter slashing car tires after an apparent domestic dispute, and he added that her passenger in the minivan had been carrying a white plastic bag. Marion testified that he believed there was probable cause to arrest Hunter for committing the state-law offense of criminal damage to property because he had witnessed her slashing a car's tires.

Sergeant Mushinsky, the other police witness, testified that he and Officer Gray stopped the minivan at about 5:00 p.m. On cross-examination, he acknowledged that at the time he did not know when Hunter had slashed the tires, and he conceded that the only reason he stopped the minivan was because he had been directed to do so. Mushinsky related that after he got out of his car, he had yelled to Gray because he saw Mosby reach into a bag between the seats as the officers approached the

minivan. Gray, Mushinsky said, handcuffed Mosby as Mosby got out of the minivan, while Mushinsky approached Hunter. Mushinsky saw that Hunter had a napkin wrapped around her finger as she gave him her driver's license. He asked her about the napkin, and she said she had cut her finger slashing her boyfriend's tires but denied that she had the knife with her. She told Mushinsky that the officers could check the minivan. As he spoke with Hunter, Mushinsky said, he smelled marijuana coming from the minivan.

Sergeant Mushinsky then asked Hunter to exit the minivan and wait in a nearby patrol car. After she complied, he searched the vehicle, starting with Mosby's white garbage bag. On top of that bag was what appeared to be a "fairly large" bag of marijuana, and another smaller bag of marijuana sat on the passenger seat. Inside the white plastic bag, he found a pair of shorts and a "large amount of crack cocaine." Mushinsky then transported Mosby and Hunter to the police station while other officers continued the search. Police found a gun under the passenger seat of the minivan. At the police station, Hunter consented to a search of Mosby's apartment, which she shared. That search uncovered another gun.

Hunter, who was not arrested or charged with any offense, also testified at the hearing. Though her story differed slightly from the testimony of the police officers, she generally confirmed the order and details of the events up to and including the traffic stop. But she testified that she did not remember Sergeant Mushinsky asking her during the stop whether she had a knife or

telling him that he could look for it in the van. She instead recalled that he had focused almost entirely on whether she had been injured during the domestic dispute.

The district court found that "the police had probable cause" to stop the minivan and arrest Hunter "because they had probable cause to believe she had committed a crime." The court questioned whether that alone was enough to "authorize them to search the vehicle," and so the court examined instead whether Hunter had consented to the search. The court found Hunter's testimony less credible than Sergeant Mushinsky's because it made sense that he would have asked her about the knife for the officers' safety. Thus, the court found that Hunter had consented to allow police to search the van and denied Mosby's motion to suppress the evidence recovered from the van and the apartment.

Mosby proceeded to a jury trial, and the jury then found him guilty on all counts. The district court sentenced him to a total of 262 months' imprisonment on the drug and § 922(g)(1) counts, plus a consecutive term of 60 months on the § 924(C) count.

## II. ANALYSIS

Mosby concedes that the police had probable cause to stop and arrest Hunter, but he argues that they lacked probable cause to search his bag and that the officers acted unreasonably in waiting until he was back inside the minivan with his bag before executing the stop. Ergo, he contends, the search was unreasonable, and the district court should have suppressed its fruits.

When reviewing the denial of a motion to suppress obtained during a warrantless search, we review legal questions de novo and factual findings for clear error. *United States v. Groves*, 530 F.3d 506, 509 (7th Cir. 2008); *United States v. McIntire*, 516 F.3d 576, 578-79 (7th Cir. 2008). The Fourth Amendment prohibits unreasonable searches or seizures, and courts exclude evidence obtained through an unreasonable search or seizure. *See Phelan v. Vill. of Lyons*, 531 F.3d 484, 488 (7th Cir. 2008); *United States v. Robeles-Ortega*, 348 F.3d 679, 681 (7th Cir. 2003). Nonetheless, police may reasonably arrest (seize) an individual when they have probable cause to believe that the person committed a crime. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003); *United States v. Moore*, 375 F.3d 580, 583 (7th Cir. 2004) (noting that police may stop vehicle when they have probable cause to believe driver committed traffic violation, even when passenger is inside). And police may reasonably search without a warrant when a person with authority voluntarily consents to the search, *Groves*, 530 F.3d at 509; *Moore*, 375 F.3d at 584, though a lack of apparent authority would invalidate the search, *Groves*, 530 F.3d at 509.

In this case, Mosby concedes, as he must, that the police had probable cause to believe Hunter had committed a criminal offense, i.e., that the circumstances known to the officers would justify a prudent police officer's belief that Hunter had committed a crime. *See United States v. Tipton*, 3 F.3d 1119, 1124 (7th Cir. 1993). After all, police officers had witnessed her destroy another's property (car tires) in violation of 720 ILCS 5/21-1(1)(a), a misdemeanor offense, *id*. 5/21-1(2). The police therefore had probable

cause to seize Hunter. *See, e.g., United States v. Hernandez-Rivas*, 513 F.3d 753, 758-59 (7th Cir. 2008) (noting that police may pull over a vehicle if they have probable cause to believe driver committed traffic violation); *Moore*, 375 F.3d at 583 (same).

Mosby, however, seems to suggest that the police must have probable cause extending not only to the driver but also to each passenger to justify stopping the driver while others are in the car. Not only would this be an unwieldy rule, but it is contrary to precedent. *See Moore*, 375 F.3d at 583 ("Once the officers (legally) stopped the cab, Moore, as a passenger in the vehicle, became subject to the officers' custody and control 'until their safety could be assured.'"). Nor were the officers, as Mosby contends, required to arrest Hunter the moment they had probable cause to do so, *see Hoffa v. United States*, 385 U.S. 293, 310 (1966); *United States v. Limares*, 269 F.3d 794, 798-99 (7th Cir. 2001), even though they could have arrested Hunter while she was alone, *see Limares*, 269 F.3d at 798-99 (upholding denial of motion to suppress over defendant's argument that police should have arrested co-defendant before co-defendant reached defendant, the moment they had probable cause). Moreover, though Mosby suggests that the officers' *real* motivation for stopping Hunter was to search his bag, rather than to arrest her, the officers' subjective motivation is irrelevant as long as they had probable cause to justify the seizure. *See Whren v. United States*, 517 U.S. 806, 812-13 (1996); *Hernandez-Rivas*, 513 F.3d at 758 n.2; *Moore*, 375 F.3d at 583 n.1.

Because the stop of the minivan was lawful, Mosby is left to argue that the police lacked probable cause to search

the van or his garbage bag. But he presses no argument about the district court's finding that Hunter consented to the search of the van other than to say—incorrectly—that the consent was tainted by an illegal stop. He does not contend that Hunter's consent was invalid independent of the stop, nor does he develop an argument (mentioned in only one sentence) that she did not have authority to consent to the search of the entire van and its contents, including the bag. Mosby instead concedes that in the district court he might have argued (but did not) that Hunter lacked apparent authority to give the police permission to search a garbage bag they knew was Mosby's. *See Groves*, 530 F.3d at 509. His concession ends the case.

Nevertheless, whether Hunter consented really is irrelevant because Sergeant Mushinsky not only smelled marijuana as he stood next to the minivan, but also, as Mosby concedes in his brief, saw marijuana in clear view on top of the garbage bag and on Mosby's seat inside the minivan. The smell alone was enough to give rise to probable cause to search the entire vehicle, including closed containers like the garbage bag. *See United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006) (noting that smell of marijuana is "simple and compelling foundation" for searching entire car); *United States v. Wimbush*, 337 F.3d 947, 950-51 (7th Cir. 2003) (noting that search of car was justified after officer saw open container of alcohol and smelled marijuana); *United States v. Mazzone*, 782 F.2d 757, 761 (7th Cir. 1986) (noting that odor of marijuana provides probable cause to search vehicle at least until likely source of odor is found); *United States v. Neumann*,

183 F.3d 753, 756 (8th Cir. 1999) (holding that alcohol odor provided probable cause to search vehicle for open container and smell of burnt marijuana justified search of entire vehicle for drugs); *see also United States v. Hines*, 449 F.3d 808, 814 (7th Cir. 2006) (noting that, under automobile exception to warrant requirement, police may search vehicle if they have probable cause to believe search will uncover contraband).

## III.  CONCLUSION

Accordingly, we AFFIRM the judgment.