In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1897

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

WILLIAM R. GEVEDON,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Indiana,
Indianapolis Division.
No. IP 96-0139-CR-T/F--John D. Tinder, Judge.

Argued January 21, 2000--Decided May 25, 2000

   Before Bauer, Ripple and Kanne, Circuit
Judges.

   Bauer, Circuit Judge.  William R. Gevedon
("William") was found guilty by a jury in
the Southern District of Indiana of seven
counts of federal firearms violations. He
was sentenced to 115 months imprisonment,
followed by a three year term of
supervised release, and ordered to pay a
$7,000.00 fine and a $350.00 special
assessment. He appeals, claiming that his
estranged wife who no longer lived in the
marital home did not have the actual or
apparent authority to consent to a search
of the home and thus the District Court
erred in denying his motions to suppress
the weapons taken from his house. He also
appeals the District Court's finding that
he was a "prohibited person" under the
sentencing guidelines and the resulting
two level increase in his base offense
level. We affirm the District Court.

I.  BACKGROUND
   Jackie Kirkwood Gevedon ("Jackie") and
William Gevedon married in 1982. Shortly
afterward they bought a home at 2385 East
U.S. 40,/1 Greenfield, Indiana. Both
Jackie's and William's names were on the
deed. William ran a motor vehicle repair

business from the detached two-car garage behind the house. It was in the attic of this garage/shop that the weapons that are the subject of this case were found. Jackie assisted the business by doing some of the book work, errands, calling customers, and getting parts. Most of Jackie's work was done from the house, but she did occasionally go to the garage/shop to conduct business or take food and snacks out to William and the others. Although William would later dispute this, Jackie had full access to the garage/shop.

Trouble developed in the marriage and in June, 1995 Jackie moved out, leaving most of her belongings behind. One month later she filed for divorce. Her return to the marital home in July to collect some of her clothing was without incident, but the animosity between Jackie and William grew and by October, when Jackie went back to the house again, she found that the locks had been changed, forcing her to break into the house and the garage/shop.

The record provides little information about what happened during the next three months, other than the closing of William's auto repair business in late 1995. William Gevedon also disappeared, fleeing the state law charges that were pending against him. His whereabouts were unknown.

Sheriff's deputies, armed with a search warrant, forced their way into the home and garage on January 6, 1996 and searched them. The house was vacant. The deputies called Jackie, ostensibly to check on her safety. William claims that this was just a ploy to gain her cooperation for the searches yet to come.

A few weeks after the warrant search, Jackie, accompanied by members of the Sheriff's Department, returned to the house to secure it. She had new locks put on both the house and the garage, had a door to the house replaced and a door to the garage/shop boarded up. While there, the police conducted what would be the first of three searches consented to by Jackie. The police told Jackie the searches were necessary because "sources" informed them that William was in possession of illegal firearms. Weapons were found in the house, but not removed.

On January 25, 1996, Jackie obtained a temporary restraining order from the Hancock Superior Court in her divorce proceedings, restraining William from coming on or about "the parties real estate at 2385 East Main Street in Greenfield, Indiana 46140." The order also granted Jackie "sole possession of said real estate until further Order of [the] Court." That order was renewed on February 8, 1996 and William was again restrained from coming onto the couples' real estate at 2385 East Main Street and Jackie was again granted sole possession of the property.

The third search, conducted on February 6, 1996, resulted in the discovery of the weapons in the attic of the garage/ shop. It is this search that William contests since the weapons found in the attic constitute the bulk of the charges against him. Prior to the search, the deputies called Jackie, informed her of the need to search the premises again and arranged for her to meet them at the house. Once there, Jackie said she thought there were guns somewhere in the garage/shop and she wanted it searched until they were found. She also asked that they be removed. Jackie volunteered that William had once told her that if he had any problems or had to hide weapons, one place he would put them was the attic. Jackie then signed a "Form to Consent to Search," remained on the premises during the search and watched as the guns were removed from the garage attic.

Based on the weapons seized from his home and garage, William was charged with seven counts of federal firearms violations. Counts 1 through 3 were for knowingly receiving and possessing unregistered silencers that had no serial number, in violation of 26 U.S.C. sec.sec. 5861(d) and 5871. Counts 4 though 6 were for knowingly receiving and possessing two machine guns and one submachine gun, two of which had no serial numbers, in violation of 18 U.S.C. sec.sec. 922(o) and 924(a)(2). Count 7 was for knowingly receiving and possessing an unregistered grenade launcher that had no serial number, in violation of 26 U.S.C. sec.sec. 5861(d) and 5871.

William Gevedon, sometimes pro se, sometimes through counsel, filed a multitude of pre-trial motions, including six motions to suppress. Three of the suppression motions denied by the District Court were related to the searches of the residence and garage. These motions are the focus of William's appeal.

After a four day trial, William was convicted on all seven counts. The Presentence Report ("PSR") recommended that William's base offense level be 20 (instead of 18) because William possessed the silencers and machine gun while he was a fugitive and subject to a charge punishable by imprisonment for more than one year. After hearing argument, the District Court found that William was a "prohibited person" under U.S.S.G. sec.2K2.1(a)(4), both because he had been a fugitive in constructive possession of the prohibited weapons, and because he possessed the weapons while under a charge punishable by imprisonment of more than one year. The court also departed upward two levels on the basis that William's criminal history was understated by his criminal history score, and added enhancements for obstruction of justice because William was a fugitive, because his offense involved 5 - 7 weapons, because at least one of the weapons was a destructive device, and because at least one of the machine guns had an obliterated serial number. The total offense level was 28. William was sentenced to 115 months imprisonment, 3 years supervised release, a fine of $7,000 and a special assessment of $350.

II.  DISCUSSION

A.  Motions To Suppress

The District Court denied all of William's motions to suppress the weapons, finding that Jackie Gevedon had both actual and apparent authority to consent to the searches and that her consent was voluntary. The first two of those motions were denied on the briefs. A suppression hearing was, however, held before the court ruled on the third motion. We review the District Court's findings of fact for clear error, while reviewing conclusions of law and mixed questions of law and fact de novo. United

States v. Duguay, 93 F.3d 346, 349-50 (7th Cir. 1996) (citation omitted). The question of whether Jackie had actual or apparent authority to consent to the searches is a mixed question of law and fact and is therefore reviewed de novo. United States v. Ladell, 127 F.3d 622, 624 (7th Cir. 1997) (citation omitted).

William Gevedon argues on appeal that his estranged wife had neither the actual nor the apparent authority to consent to the weapons searches. The District Court found that she had both. Because we find that Jackie Gevedon had actual authority to consent to the search of the home and garage/shop, we do not address the question of whether she also had apparent authority./2

The Fourth Amendment guarantees citizens the right to be free from unreasonable search and seizure. See Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). William complains that his rights were violated by the warrantless search of his property and the seizure of his weapons. Law enforcement officers may, however, legally search without a warrant if they obtain voluntary consent from the person whose property is to be searched,Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973), or from someone with actual or apparent authority over the premises. United States v. Aghedo, 159 F.3d 308, 310 (7th Cir. 1998); United States v. Saadeh, 61 F.3d 510, 517 (7th Cir. 1995).

In a case strikingly similar to this one, we examined the issue of whether a wife has the authority to consent to a search of the martial property, including portions that she does not regularly enter or occupy, and concluded that she does. United States v. Duran, 957 F.2d 499, 505 (7th Cir. 1992) ("a spouse presumptively has authority to consent to a search of all areas of the homestead"). However, we tempered that rule with a caveat that "the nonconsenting spouse may rebut this presumption only by showing that the consenting spouse was denied access to the particular area searched." Id. William Gevedon seizes upon this nar row exception, as he must if he is to prevail, and tries to squeeze his cause into it by claiming that he denied Jackie

access to the garage attic where the weapons were found. His attempt is in vain.

The opening to the garage attic was covered by a square access panel made of sheet metal. It was held in place by four sheet metal screws, one in each corner. William claims that because a special socket was required to unscrew the screws, and that Jackie was unaware of where he kept it, she was denied access to the attic. William supplements this by noting that Jackie never went into the attic and thus contends she never occupied it or had the common authority over it to consent to its search. William's arguments are unpersuasive and ignore other evidence gleaned during the suppression hearing, namely that William never told Jackie that she could not go into the attic, that Jackie did go into the attic once to look around, and that the "special screws" could have been removed with other devices such as pliers or a wrench if one did not mind stripping the screw heads.

The clear and simple fact is that Jackie was still William's legal wife at the time she consented to the searches. Presumptively, then, she had the actual authority necessary for a valid consent. Duran, 957 F.2d at 505. William has not rebutted this presumption. We thus find that Jackie had actual authority to consent to the search of the house and garage/shop and that the search and seizure by the authorities pursuant to that consent was valid.

The District Court was also persuaded, as are we, by the fact that Jackie had a court order giving her sole possession of the Gevedons' real estate at 2385 East Main Street. William, however, points out that in 1993 the garage was given a separate address. Because of the inconsistency between the address numbering system of the City of Greenfield and the County of Hancock, and for reasons related to 911 emergency services, the Hancock County Planning Commission assigned the Gevedon property two addresses. The house was designated 2385 East Main Street, and the garage/shop was designated 2387 East Main Street. William argues that the court order gave Jackie, as its literal language suggests, control over only the

house, not the garage/shop.

To read the order as William suggests is to pervert its meaning and its intention. Indeed, the District Court characterized the argument as "much ado about nothing." Absolutely nothing changed when the garage was given a separate address. The property was not partitioned, sold, or assigned. Both the house and the garage continued to be accessed by one, common driveway. And Jackie's name was still on the deed for the entire property. We thus agree with the District Court that the divorce court's order was meant to give Jackie sole possession of and control over the entire homestead, an indication of actual authority.

We conclude that the District Court did not err in finding that Jackie had the requisite authority to consent to the search. Jackie was still, at the time of the search, William's wife. The fact that Jackie was estranged from William gives us no pause since she had a court order giving her exclusive control over the property. The District Court properlyrecognized these facts and applied the case law to reach the correct result. We thus affirm its denials of William's motions to suppress the weapons.

B.  Finding That William Was A "Prohibited Person"

At William's sentencing, the District Court found a base offense level of 20, pursuant to U.S.S.G. sec.2K2.1(a)(4)(B)(i) because William was a "prohibited person" in possession of illegal firearms. Application Note 6 to that guideline defines a "prohibited person" as anyone who is under indictment for a crime punishable by imprisonment for more than one year, or is a fugitive from justice. The District Court found that William qualified as a "prohibited person" under both these criteria. We review the District Court's interpretation of the scope of the guidelines de novo. United States v. Yoon, 128 F.3d 515, 528 (7th Cir. 1997) (citation omitted). The court's factual findings are reviewed for clear error. Id.

William argues that he is not a "prohibited person" within the meaning of

the guidelines because (1) he did not possess the weapons while he was a fugitive, and (2) because he was not under an "indictment" for a federal crime punishable by imprisonment for more than one year. We reject each of these arguments and discuss them in turn.

First, although William does not concede he was a fugitive, there can be no doubt that he was. He disappeared from the marital home in late 1995 or early 1996, while out of prison awaiting trial on state charges of criminal confinement, battery, criminal recklessness and auto theft. His whereabouts were unknown to Jackie, the law enforcement officers, and others. He did contact his daughter during this time, but often to ask about the status of the law enforcement interest in him or their efforts to find him. Once he even asked her to live at the house for him, evidencing his intent not to return for the near future. There is no doubt, then, that William was a fugitive. And the District Court so found.

The question, then, is whether he possessed the weapons while he was a fugitive. William argues that he did not because he was a fugitive, away from home, while the weapons remained at all times in the attic of his garage. It is true that William was not in actual possession of the weapons, but that does not end our inquiry because possession may be either actual or constructive. "[P]ossession . . . can be established despite the fact that the firearm was not in the immediate possession or control of the defendant." United States v. Kitchen, 57 F.3d 516, 520 (7th Cir. 1995). "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." United States v. Garrett, 903 F.2d 1105, 1110 (7th Cir. 1990), cert. denied, 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed. 2d 227 (1990).

In Kitchen, we found that the defendant constructively possessed handguns, despite the fact that he was incarcerated at the time the agents seized the handguns from his house. 57 F.3d at 520-21. Applying our rule that

"[c]onstructive possession can be established by showing that the firearm was seized at the defendant's residence," Id. at 521 (citation omitted), to this case, we find that William constructively possessed the weapons even though he was no longer living at the residence at the time they were taken from the garage attic. The District Court heard ample testimony that, through a friend, William was exercising control over the weapons during his absence. Indeed, while William was a fugitive, he called Richard Couch, a friend, and asked him to go to the property to secure it and prevent others' access by backing up a wrecker against the front door and a case loader against the back door. Coupling this evidence with William's earlier arguments that he was in control of the property and doing everything within his power to deny Jackie access to it, the District Court held that William was in constructive possession of the weapons while a fugitive, making him a "prohibited person" within the sentencing guidelines. We agree with the District Court's finding and affirm its ruling.

William's final argument is that the District Court erred in finding him a "prohibited person" on the alternate ground that he was in possession of illegal firearms while he was "under indictment" for a "crime punishable byimprisonment for more than one year" because he was not "under indictment." The state charges against him were filed by information. He asks us to believe that one who is charged by information instead of indictment is not a "prohibited person" because Application Note 6 specifically states "indictment" and omits "information." Again, we believe that his interpretation is a perversion of the meaning and intention of the sentencing guidelines. We are not alone in our belief. The Second, Eighth and Tenth Circuits have all held that the term "under indictment" includes a person charged by information. See United States v. Shepardson, 196 F.3d 306, 309-310 (2nd Cir. 1999); Schook v. United States, 337 F.2d 563, 567-68 (8th Cir. 1964); United States v. Fillman, 162 F.3d 1055, 1057 (10th Cir. 1998).

This is a matter of statutory construction and common sense. William was convicted under 18 U.S.C. sec.922,

among others. That statute defines "indictment" to include "indictment or information." 18 U.S.C. sec.921(a)(14). Sentencing under the statute should be consistent with the statute and thus that definition must logically extend to U.S.S.G. sec.2K2.1 since it is the guideline for sentencing violations of sec.922. Furthermore, as the District Court remarked, to hold otherwise would arbitrarily exclude charges by those states, such as Indiana, that permit charging by information. We do not believe this would further Congress' intent to prohibit the possession of firearms by those facing other criminal charges. Thus, we hold that the term "prohibited person" as used in U.S.S.G. sec.2K2.1 covers those persons charged by information, including William Gevedon.

## III. CONCLUSION

For the foregoing reasons, the conviction and sentence of the defendant are affirmed.

AFFIRMED.


/1 Sometime thereafter East U.S. 40 became known as East Main Street.

/2 Likewise, we do not address any arguments made by William that Jackie's consent was somehow involuntary because the sheriff's deputies were kind to or solicitous of her because they wanted to "avoid the warrant requirement." We believe that argument to be wholly without merit. We find nothing unusual or illegal about the officers' preference to conducting a search by consent over a search by warrant in this case.