In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-2985

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BENITO MOJICA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CR 00755-5 — **Ronald A. Guzmán**, *Judge.*

ARGUED MAY 25, 2017 — DECIDED JULY 14, 2017

Before WOOD, *Chief Judge,* and BAUER and HAMILTON,
*Circuit Judges.*

BAUER, *Circuit Judge.* Appellant Benito Mojica appeals his
conviction on two counts for various drug-trafficking crimes.
Mojica claims that the district court improperly denied his
motion to suppress cocaine and other evidence. He also
challenges his sentence, disputing the district court's finding

that he was jointly accountable for 18.084 kilograms of cocaine. We affirm.

## I. BACKGROUND

### A. Investigation and Arrest

Beginning in 2011, the FBI and other law enforcement agencies investigated a large-scale cocaine-trafficking organization operated by Jose de Jesus Ramirez-Padilla (known as "Gallo"), in Chicago, Illinois. Federal agents placed court-authorized wiretaps on Gallo's phones, which intercepted numerous calls. As a result of this investigation, the government charged 40 individuals, including Mojica, with various drug-trafficking crimes.

In May 2012, Gallo was robbed at gunpoint outside of his residence where he initially kept his drugs and money. Because he worried that the robbers would return to burglarize his home, he looked for a new place to store his drugs and money. Gallo learned from his brothers that Mojica, who was one of Gallo's regular customers, had an apartment to rent.[1] Mojica co-owned a two-story residence on 46th Place in Chicago, where he lived with his family on the first floor and rented out the second floor.

On May 8, 2012, Gallo called Mojica, telling him that he was recently robbed at gunpoint and that he was looking for an apartment. Gallo explained to Mojica that he wanted his brothers, Luis Ramirez-Padilla ("Luis") and Horacio Ramirez-

---

[1] In April 2012, Mojica became one of Gallo's regular customers, purchasing cocaine from him once every one to two weeks.

Padilla ("Horacio"), to use Mojica's second-floor apartment as a stash house. Gallo assured Mojica that his brothers would not bring customers to Mojica's apartment. Mojica agreed to this arrangement and provided a stash house for Gallo's cocaine and drug proceeds from May 20, 2012, until September 27, 2012.

On September 27, 2012, federal agents executed an arrest warrant for Mojica. After his arrest, he was transported to the street outside the front of his home. Meanwhile, other agents executed a search warrant for the first and second floors of Mojica's two-story residence. The agents searched the second floor, which was rented out to Gallo's brothers, Luis and Horacio. During the search, agents found $113,991.60, 86 grams of cocaine, scales, a cutting agent, and cell phones.

The agents also searched the first floor residence where Mojica lived with his family. There, FBI Agent Gustavo Martinez interviewed Mojica's wife, Sonia Mojica; he learned that Mojica possessed the only keys to their detached garage, located near the rear of the property. The keys to the garage were obtained from Mojica, who was outside in an agent's vehicle. Sonia gave the agents consent, both orally and in writing, to search the detached garage where the agents found cell phones, various papers, several boxes of baggies, and two baggies containing cocaine. There was a notepad near the bags of cocaine with Luis' phone number followed by the words "Gallo #2."

### B.  Procedural History

On January 8, 2013, a grand jury returned an indictment charging 23 individuals, including Mojica, with drug-trafficking crimes. Specifically, Mojica was charged with conspiracy and possession of cocaine with intent to distribute in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Mojica's trial was severed from his co-defendants and ended in a mistrial.

On July 8, 2014, a grand jury returned a superseding indictment, charging Mojica with the same crimes charged in the original indictment plus two counts of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), and four counts of using a cell phone in the commission of a felony in violation of 21 U.S.C. § 843(b).

Mojica filed a motion to suppress, arguing that Sonia lacked the authority to consent to the search of the garage. The district court held a hearing on January 14, 2015, where several witnesses testified, including Sonia and Agent Martinez. The district court concluded that Sonia had actual authority to consent to the search of the garage, finding that Mojica's possession of the garage keys was not exclusive and that Sonia had the right to authorize entry to the garage without specific permission from Mojica. The district court also concluded that Sonia had apparent authority, finding that she told Agent Martinez that she was married to Mojica for 21 years and that she rarely went into the garage. The district court found that, having no information to the contrary, the agents were allowed to rely on the presumption that a spouse has authority to consent to a search of all areas of the homestead.

At trial, the government introduced wiretapped calls, expert testimony about drug trafficking methods, and the evidence found during the search. The government also introduced testimony from Gallo, who pleaded guilty and agreed to cooperate.

Gallo testified that he started making multiple-kilogram purchases of cocaine – up to three kilograms at a time – while using Mojica's property as a stash house. Although Gallo did not testify as to how frequently he purchased two to three kilograms, he testified that he replenished his supply as he sold out. Gallo testified that his brothers stored up to three kilograms of cocaine and up to $150,000 while using Mojica's second-floor apartment as a stash house.

On February 5, 2015, the jury convicted Mojica on all counts of the superseding indictment. Mojica moved for a judgment of acquittal or a new trial; the court denied the motion.

The Probation Office prepared the Presentence Investigation Report, recommending that Mojica be held jointly responsible for one kilogram of cocaine per week for 18 weeks, plus 84 grams that Mojica acquired before he rented out the apartment to further the conspiracy. This totaled 18.084 kilograms of cocaine, resulting in a base offense level of 32. *See* U.S.S.G. § 2D1.1(c)(4) (assigning an offense level of 32 for at least 15 kilograms but less than 50 kilograms of cocaine). With an offense level of 32 and a criminal history category of I, the corresponding advisory Sentencing Guidelines range was 121-151 months' imprisonment. Mojica filed objections to the PSR, arguing that the record did not support him being held accountable for 18.084 kilograms of cocaine.

At sentencing, the district court rejected Mojica's objections to the PSR, adopted the PSR's recommendations, and sentenced Mojica to 121 months' imprisonment. This appeal followed.

## II. DISCUSSION

Mojica raises two main arguments. First, Mojica contends that the district court erred in denying his motion to suppress the evidence obtained in the search of the detached garage and, second, he argues that the district court clearly erred when, for purposes of sentencing, it held him jointly accountable for 18.084 kilograms of cocaine.

### A. Motion to Suppress

When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and the legal conclusions, including mixed questions of law and fact, *de novo*. *United States v. Gevedon*, 214 F.3d 807, 810 (7th Cir. 2000). Whether Sonia had actual or apparent authority to consent to the search of the detached garage is a mixed question of law and fact and is therefore reviewed *de novo. See id.*

A warrantless search of property is *per se* unreasonable and a violation of the Fourth Amendment unless the government demonstrates that an established exception applies. *United States v. Henderson*, 536 F.3d 776, 779 (7th Cir. 2008) (citation omitted). One established exception is a search of property that is conducted pursuant to voluntary consent given by a person with authority. *United States v. Wright*, 838 F.3d 880, 884 (7th Cir. 2016). Consent may be obtained from a person

whose property is searched, a third party who shares common authority over the property, or a co-occupant who possesses apparent authority. *Georgia v. Randolph*, 547 U.S. 103, 109 (2006). Because we agree with the district court's conclusion that Sonia had apparent authority, we need not address the issue of whether she also had actual authority.

Generally, "[a]pparent authority exists if 'the facts available to an officer at the time of a search would allow a person of reasonable caution to believe that the consenting party had authority' over the property to be searched." *Wright*, 838 F.3d at 887 (quoting *United States v. Ryerson*, 545 F.3d 483, 489 (7th Cir. 2008)). And, in *United States v. Duran*, we held that "a spouse presumptively has authority to consent to a search of all areas of the homestead … ." 957 F.2d 499, 505 (7th Cir. 1992). Here, it is undisputed that Sonia is Mojica's spouse; thus, Mojica must rebut the presumption to prevail. *See id.*

Mojica contends that Sonia lacked apparent authority because the facts available to the agents at the time of the search would not have led a reasonable person to believe that she had authority over the detached garage. Specifically, he argues that the agents' belief that Sonia had authority over the garage was unreasonable because she told agents that she did not have a key and that she had not been in the garage for a month and a half. Citing to *United States v. Groves*, 530 F.3d 506, 509–10 (7th Cir. 2008), the government counters that the lack of the possession of a key is only one of many variables to be considered in determining whether a third party had authority to consent. Indeed, the lack of the possession of a key is the only *Groves* factor that weighs in Mojica's favor. *See Groves*, 530 F.3d at 509–10. The government's argument is persuasive,

especially in light of the presumption that a spouse has the authority to consent to a search of all areas of the "homestead." *Duran*, 957 F.2d at 505; *Gevedon*, 214 F.3d at 811.

Here, Sonia told Agent Martinez that she had been married to Mojica for 21 years and that they had been living at their co-owned residence for ten years. Even though Agent Martinez knew that Sonia rarely entered the garage, he could reasonably believe that she, as a spouse, had access to the garage but simply chose not to enter regularly. *See Duran*, 957 F.2d at 505 ("One can have access to a building or a room but choose not to enter."). Although Sonia was not in possession of the garage key when she was interviewed, neither she nor anyone else told the agents that she was denied access to the detached garage. Instead, after the agents obtained the garage key from Mojica, Sonia signed the consent form to permit the agents to search the detached garage. Without any information to the contrary, the agents reasonably relied on Sonia's apparent authority. We conclude that Sonia's apparent authority to consent to the search of the detached garage was sufficient to permit the agents' warrantless search. The district court properly denied Mojica's motion to suppress.

### B. Cocaine Amount Challenge

Mojica challenges the district court's determination that he was jointly accountable for 18.084 kilograms of cocaine. He maintains that reliable evidence does not support the district court's drug-quantity finding and amounts to clear error.

We review for clear error a district court's factual findings at sentencing, *United States v. Melendez*, 819 F.3d 1006, 1011 (7th Cir. 2016), which includes the drug quantity it attributes to the

defendant for sentencing purposes, *United States v. Hernandez*, 731 F.3d 666, 671 (7th Cir. 2013) (citing *United States v. Contreras*, 249 F.3d 595, 602 (7th Cir. 2001)). Under clear-error review, we "will reverse a drug-quantity finding only if a review of the record leaves us with a 'firm and definite conviction that a mistake has been made.'" *United States v. Miller*, 834 F.3d 737, 741 (7th Cir. 2016).

A defendant has a "due process right to be sentenced on the basis of accurate information[,]" however, a preponderance of the evidence is all that is required for a drug-quantity finding. *United States v. Bozovich*, 782 F.3d 814, 817–18 (7th Cir. 2015) (citations omitted). Determining drug quantities under the Sentencing Guidelines is often challenging. *Melendez*, 819 F.3d at 1012; *see also United States v. Rodriguez*, 67 F.3d 1312, 1325 (7th Cir. 1995) (noting that drug dealers typically do not use invoices). While a district court must avoid "nebulous eyeballing" when determining drug quantity, it need not "emulate the precision of Newtonian Physics." *United States v. Taylor*, 72 F.3d 533, 545 (7th Cir. 1995). A district court "may make reasonable though imprecise estimates based on information that has indicia of reliability." *Bozovich*, 782 F.3d at 818. A district court "should normally err on the side of caution" when choosing among plausible estimates, but it "does not automatically commit clear error when it fails to use the most conservative calculation possible." *Melendez*, 819 F.3d at 1012 (quoting *Bozovich*, 782 F.3d at 818).

Here, the district court adopted the PSR's calculation, which found Mojica responsible for 18.084 kilograms of cocaine—1 kilogram per week for 18 weeks—plus the 84 grams he acquired before renting out the apartment to further the

drug-trafficking organization. The probation officer made this determination by relying on information provided by Gallo and other evidence arising out of the investigation into his drug-trafficking organization. Particularly, the PSR stated that, "according to Agent [William] Roecker, the substance of recorded telephone conversations, the seizure of drugs, recovery of drug distribution proceeds, and the sworn testimony of [Gallo] establish that the [Gallo drug conspiracy] handled at least 1 to 2 kg of cocaine per week when [Gallo's] brothers resided in Mojica's apartment." Moreover, the probation officer used a conservative estimate by calculating only one kilogram per week, whereas Agent Roecker determined that the drug-trafficking organization handled at least one to two kilograms per week.

Not only did the district court adopt the PSR, but it elaborated on how it found Gallo's testimony credible and supported by the rest of the evidence. At sentencing, the district court stated:

> I find the testimony given by Mr. Gallo before this Court on several occasions, he being the head of the organization and knowing more about it than anyone else, is both reasonable and supported by the rest of evidence. Mr. Gallo had many, many runners working for him. He had many, many suppliers. There were dozens of people associated with this conspiracy, and to take a slice of the transactions that were done with one or two people is not an accurate picture of what was going on. He had an accurate picture. He testified as to the amount of cocaine

> that was being moved. And having heard him, having heard him cross-examined on that and everything else, I find his testimony to be credible and to establish that, more likely than not, the amount of cocaine being moved through his organization is as he said.

Mojica claims that the district court based its drug-quantity finding on Gallo's testimony regarding how much cocaine the drug-trafficking organization moved during the conspiracy. Mojica's argument is not that Gallo was unreliable. Instead, his argument is that Gallo's reliable testimony does not support the drug-quantity finding. Mojica claims that Gallo's testimony supports a much lower quantity of cocaine, such as somewhere between 4.86 to 14.59 kilograms of cocaine. He also contends that this estimate does not take into account the evidence from wiretapped cell phone conversations that show Gallo was unable to acquire cocaine for about three weeks.

Mojica's argument is unpersuasive and only further supports the district court's drug-quantity finding. Mojica arrives at the 14.59 kilograms of cocaine estimate based on Gallo's plea agreement, which provided that the drug-trafficking organization distributed 50 to 150 kilograms of cocaine from January 2009 to September 2012. On the high end, this equates to 0.81 kilograms of cocaine per week over an 18-week period. But, Gallo's testimony indicates that attributing only 0.81 kilograms per week during the 18-week period would be an underestimation. Gallo testified that the quantities he purchased substantially increased when using Mojica's apartment as a stash house—up to three kilograms at a time. Even though wiretapped cell phone conversations indicate that

Gallo was unable to obtain cocaine for about three weeks, the district court could reasonably, though imprecisely, estimate that the drug-trafficking organization moved multi-kilogram quantities at other times, based on Gallo's testimony and other evidence. We find no error.

### III.  CONCLUSION

Mojica's conviction and sentence are AFFIRMED.