**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 2, 2020[*]
Decided April 6, 2020

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-1160

| | |
|---|---|
| EARL CONNER, <br>     *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 17 C 7299 |
| CHRISTOPHER VACEK <br> and JAMES MASON, <br>     *Defendants-Appellees*. | Rebecca R. Pallmeyer, <br> *Chief Judge*. |

**O R D E R**

After police officers responding to a domestic-violence call broke down his door and arrested him in front of his daughter, Earl Conner sued a police sergeant and fire captain involved in the response. He asserts that they violated his Fourth Amendment

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

rights when they entered his apartment and arrested him without a warrant. The district court entered summary judgment for the defendants, and we affirm.

We credit Conner's version of events to the extent that it is supported by admissible evidence and is not clearly contradicted by the video and audio recording of the episode. *See Scott v. Harris,* 550 U.S. 372, 379–81 (2007); *Tolliver v. City of Chicago,* 820 F.3d 237, 241 (7th Cir. 2016). Late one afternoon in 2016, Conner returned to his Chicago apartment, where his ex-girlfriend Cameshia Martin was watching their one-year-old daughter. Martin did not live with Conner or have keys to the apartment, but she kept a night kit there and often stayed over with their child. (Conner admits that he frequently left the back door unlocked so Martin could get in.) Conner found Martin in his bedroom, and the two began arguing. The argument escalated, and Martin eventually ran out of the apartment. She called 911 from the sidewalk, reporting that Conner had assaulted her and requesting medical assistance. Conner stayed in the bedroom with their daughter.

Emergency services dispatched police, fire, and medical units in response to Martin's call. Chicago Fire Department Captain James Mason was among the first on scene and remained briefly to administer medical treatment to Martin until an ambulance came. Later, when Mason was no longer present, Sergeant Christopher Vacek of the Chicago Police Department arrived and began investigating the domestic-battery report. Other officers told Vacek about Martin's report that Conner pushed their one-year old daughter aside, then pulled Martin's hair and beat her with a golf club. Vacek knocked on Conner's front door to try to talk to him. Conner did not respond. (He admits that he saw the police outside and heard knocking but asserts that Vacek did not identify himself or ask him to open the door at this point.)

Vacek then questioned Martin as she was being treated in the ambulance for injuries. Martin claimed that she had a key to the apartment but left it inside when she ran out. When she said that Conner did not stay with her all the time, Vacek asked about their living situation:

Vacek: He stays somewhere else?

Martin: No. He stays here, but if he's gone for two or three days, he'll be downtown. On Michigan.

Vacek: Okay. But on a regular basis, you guys stay together, and he stays with the child?

Martin: No. She goes to daycare. I drop her off and pick her up.

Vacek: Sure, but what I'm saying is, when he stays there, the child's there too?

Martin: Yeah.

Vacek's bodycam captured Martin asking him to break down the apartment door because she believed that her daughter was in danger. She assured Vacek that, although there was a dog in the apartment, it would not bite. Vacek told her he would arrest Conner on entry, called for backup, and asked some of the firefighters present to help break down the door.

Before forcing entry into Conner's apartment, Vacek knocked one last time and asked Conner to open the door. Conner admits that he heard the knock and Vacek's request this time, but he did not respond. Officers then broke down the door and entered the apartment with their guns drawn. They found Conner in the bedroom with his daughter and arrested him. He was later charged with several counts of domestic abuse and child endangerment. Prosecutors eventually dismissed the child endangerment count, but a jury found Conner guilty of battering Martin.

After his conviction, Conner sued Vacek and Mason under 42 U.S.C. § 1983 for entering his apartment and arresting him without a warrant, and for maliciously prosecuting him in violation of state law. The district court dismissed the malicious prosecution claims at screening. *See* 28 U.S.C. §§ 1915(e)(2), 1915A. Later, it entered summary judgment on the remaining claims for Mason and Vacek. The claims against Mason failed because no evidence showed that he entered Conner's apartment or was otherwise personally involved in the alleged constitutional violations. As for Vacek, the court explained that the sergeant reasonably believed he had valid consent to enter the apartment, and also that exigent circumstances existed permitting a warrantless entry. The court further ruled that Vacek had probable cause to arrest Conner for domestic battery because he observed Martin receiving treatment for injuries that she reported Conner had inflicted.

We review summary judgment rulings de novo. *See Tolliver*, 820 F.3d at 241. We begin with Conner's claims against Mason. To recover damages under 42 U.S.C. § 1983, a plaintiff must establish that a defendant was personally responsible for any alleged deprivations of constitutional rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Although certain members of the Chicago Fire Department were involved in the forced entry and present during the

arrest, Mason left the scene before they entered the apartment. Because he was not present during—much less personally involved in—the search, seizure of evidence, or arrest, Mason cannot be liable for any alleged constitutional violation.

As for the claims against Vacek, Conner maintains that Vacek entered his apartment unlawfully because he did not have a warrant or permission to enter. Though Conner is correct that a warrantless search is presumptively unreasonable, a search conducted with the consent of a person with apparent authority over a property is a well-recognized exception. *See Georgia v. Randolph*, 547 U.S. 103, 106 (2006); *United States v. Mojica*, 863 F.3d 727, 731–32 (7th Cir. 2017). Here, Martin not only gave Vacek permission to enter but also asked him to break down the front door because, she said, her daughter was in danger. Though Conner attempted to dispute this by submitting a handwritten note in which Martin denied giving Vacek permission to enter, the district court was correct not to credit this statement because it was unsworn and the audio from Vacek's bodycam squarely contradicts it. *See Scott*, 550 U.S. at 380.

Conner next argues that, even if Martin appeared to consent, she did not have authority to do so because she did not live in the apartment, her name was not on the lease, and her report that her daughter was in danger was false. Our focus, however, is on whether Vacek reasonably believed that she could consent based on what he knew at the time. *See United States v. Alexander*, 573 F.3d 465, 474 (7th Cir. 2009). Factors we consider in evaluating the reasonableness of an officer's belief that someone has authority over a premises include whether that person has a key, says that they reside there, has children and pets at the address, keeps personal belongings there, and is allowed to enter when the owner is not home. *See United States v. Groves*, 530 F.3d 506, 509–10 (7th Cir. 2008).

All of these factors were present in this case. Vacek knew that Martin had called 911 for an incident of domestic abuse that occurred at the address, that her daughter lived at the apartment, and that she was allowed to enter to care for her daughter when Conner was not home. Martin also represented to Vacek that she had left her key in the apartment when she fled and that she had a dog at the address. When Vacek's questions suggested that he believed Martin lived at the apartment with Conner, she did not correct him. Based on what he was told by other officers and what he learned from following up with Martin, Vacek reasonably believed that Martin had authority to allow him to enter the premises. *Compare United States v. Ryerson*, 545 F.3d 483, 489 (7th Cir. 2008) (third party who removed child, was locked out, had no personal property in a residence, and maintained a second residence may still have apparent

authority based on knowledge of premises and claims of continued use) *with United States v. Terry*, 915 F.3d 1141, 1145 (7th Cir. 2019) (not reasonable to assume person who appears to be an overnight guest has authority absent further inquiry).

Conner also contends that the defendants were not entitled to summary judgment on his claims for unlawful arrest and imprisonment. He insists that, because the child-endangerment report was false and that charge was ultimately dismissed, Vacek did not have probable cause to arrest him. But probable cause to believe that a person has committed *any* crime defeats a claim of false arrest, so long as the officer's belief is reasonable based on what was known to him at the time. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007). Here, Vacek knew that Martin reported that Conner pushed their child and battered Martin with a golf club. And, as he observed her being treated for injuries, the sergeant had no reason to doubt the report's credibility. Because Martin was a victim and an eyewitness, her reports alone gave Vacek probable cause to arrest Conner. *See Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000).

Conner also faults the district court for disregarding Martin's medical records from his state-court proceedings, suggesting that they undermine the story that he battered her. But again, in assessing the existence of probable cause, we can look only to what the arresting officer knew at the time. Furthermore, as long as his domestic-battery conviction stands, we cannot entertain any attempt by Conner to dispute the essential facts that support it. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994); *Viramontes v. City of Chicago*, 840 F.3d 423, 428 (7th Cir. 2014).

We have considered Conner's other arguments, which primarily attack the conduct of his criminal trial in state court, and none has merit.

AFFIRMED