**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 23, 2022[*]
Decided June 27, 2022

**Before**

DIANE S. SYKES, *Chief Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 21-2720

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:19-CR-00876(1) |
| LUIS DUARTE, *Defendant-Appellant*. | Virginia M. Kendall, *Judge*. |

**O R D E R**

Luis Duarte appeals his conviction for possession of a firearm by a felon. *See* 18 U.S.C. § 922(g)(1). He challenges the denial of his motion to suppress the firearm on the ground that police officers lacked reasonable suspicion to stop him. We conclude

---

[*] We granted the parties' joint motion to waive oral argument, and the petition is therefore submitted on the briefs and the record. FED. R. APP. P. 34(a)(2).

that the district court was entitled on this record to uphold the officers' actions, and therefore affirm the judgment.

Around midnight on March 27, 2019, officers Aaron David and Andrew David were patrolling Chicago's west side while they investigated a report of shots fired nearby, about an hour earlier. Aaron David knew the surrounding area to be the border between territories controlled by rival gangs, the Latin Kings and the Two-Six gang. From their car, the officers saw Duarte on the sidewalk. Officer Andrew David later testified that he recognized Duarte as a possible Two-Six gang member. The officers pulled over to the opposite side of the street and asked two men if they had heard gunshots. The men pointed eastward, to the area where the officers had seen Duarte. By this time, Duarte had reversed direction and was walking away from the officers.

The officers drove closer to Duarte, got out of the vehicle, and approached him from behind on foot. They walked toward him without weapons drawn and calmly asked to speak with him. Duarte turned toward the officers, and Officer Aaron David noticed a weighted object in the front pocket of Duarte's hooded sweatshirt. Duarte raised his hands and spontaneously began to remove his sweatshirt. Aaron David later testified that Duarte's action was "an indication to me that [Duarte] might be either trying to fight me or is doing something suspicious." As Duarte lifted the sweatshirt over his head, Aaron David noticed "the pocket sunk down, and it was still hanging with the weighted object in it." At that moment, the officer grabbed Duarte's left hand and the sweatshirt pocket, in which he felt the weighted object. After confirming that the object was the size and shape of a firearm, he yelled "pole," meaning gun. Andrew David then asked Duarte "You're Two-Six, right, I've seen you before?" Duarte nodded in agreement.

The officers later determined that the object in the sweatshirt was a .38 revolver with three spent shell casings. Duarte was charged with unlawful possession of a firearm by a convicted felon. 18 U.S.C. § 922(g)(1).

Duarte moved to suppress the firearm based on the officers' lack of reasonable suspicion to conduct an investigatory *Terry* stop and subsequent frisk. The district judge denied the motion. She concluded that no seizure occurred until Aaron David grabbed Duarte's hand. At that point, she explained, the officers had reasonable suspicion to believe that Duarte possessed a gun or was involved in a shooting: (1) shots were fired nearby an hour and a half earlier; (2) Duarte was in a neighborhood with frequent gun violence, after midnight; (3) Andrew David recognized Duarte as a Two-Six gang member; (4) Aaron David knew that Two-Six members carried guns; (5) the two men on

the other side of the street told the officers they heard shots coming from Duarte's direction; (6) Duarte changed direction after the officers passed him in their car; (7) a weighted object, with the size and shape of a firearm, hung in Duarte's sweatshirt pocket; and (8) Duarte attempted to remove his sweatshirt when the officers approached him.

On appeal, Duarte challenges the district judge's decision to credit the officers' testimony. He argues, first, that Andrew David could not have had a sufficient view from the moving police car to recognize him as a gang member. Duarte also disputes the veracity of the officers' testimony about their conversation with the two men on the street—testimony that Duarte says must be disregarded because the officers gave it at the suppression hearing rather than in a written post-arrest report.

When reviewing the denial of a suppression motion, we review factual findings for clear error, *see United States v. Wilson*, 963 F.3d 701, 703 (7th Cir. 2020), and the judge here did not clearly err in crediting the officers' testimony. The particular testimony challenged by Duarte was not "inconsistent" or "improbable on its face." *United States v. Terry*, 572 F.3d 430, 434–35 (7th Cir. 2009) (internal quotation marks omitted). For instance, with regard to Andrew David's testimony that he recognized Duarte, body-camera footage (admitted into evidence at the hearing) captured the officer's question to Duarte about being a Two-Six gang member. As for the officers' testimony about their conversation with the two men in the street, none of that testimony conflicted with any other evidence in the record.

Duarte next challenges the judge's determination that the weighted object in his sweatshirt pocket was sufficient to give rise to reasonable suspicion. But a conspicuous bulge in a person's clothing can support an officer's reasonable suspicion that an individual is armed and potentially dangerous. *See Pennsylvania v. Mimms*, 434 U.S. 106, 112 (1977). Moreover, any assessment of reasonable suspicion is a fact-intensive inquiry, *Wilson*, 963 F.3d at 703, and here there are additional circumstances that gave the officers a basis to suspect that Duarte had engaged in criminal activity. Specifically, upon responding to a reported shooting on contested gang territory, Aaron David saw Duarte switch direction upon the patrol car's approach and then try to remove his sweatshirt, perhaps to "fight" or do "something suspicious." Taken together, these facts are enough to find reasonable suspicion. *See id.* at 703–04 (reasonable suspicion where defendant had bulge in clothing and acted evasively in high-crime area following dispatch report of a crime in progress); *see also United States v. Richmond*, 924 F.3d 404,

411 (7th Cir. 2019) (reasonable suspicion where defendant had bulge in clothing and acted evasively in high-crime area).

AFFIRMED